# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

SCOTT PHILLIP LEWIS,

          Plaintiff,

    v.                              8:25-CV-18
                                         (LEK/MJK)

MATTHEW MEYER,
AMY CONWAY and
ERICA PUTNAM LITTLE,

              Defendants.

_____

SCOTT PHILLIP LEWIS, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE LAWRENCE E. KAHN, SENIOR U.S. DISTRICT JUDGE:

## ORDER and REPORT-RECOMMENDATION

On January 4, 2025, the pro se plaintiff filed a civil rights complaint, purportedly pursuant to § 18 U.S.C. 1983, alleging violations of his Fourteenth Amendment rights.[1] (Dkt. No. 1) (Complaint ("Compl.")). In addition to the complaint, plaintiff filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 2). The Clerk has sent plaintiff's Complaint and IFP application to this court for its review.

---

[1] The court notes that plaintiff commenced this action two days before Chief United States District Judge Brenda K. Sannes' January 6, 2025 pre-filing injunction, permanently enjoining plaintiff from filing any pleadings or documents of any kind (including motions) as a pro se plaintiff in the U.S. District Court for the Northern District of New York without prior permission of the Chief Judge or his or her designee. (*See* Case No. 8:24-pf-00002, Dkt. No. 3).

1

## I.    <u>IFP Application</u>

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, although somewhat incomplete, the court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915.  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir.

2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal,* 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.  **Complaint**

Plaintiff's claims arise from his 2024 election bid for New York's 21st Congressional District. (Compl., ¶ 6). The court will incorporate the facts of plaintiff's complaint as necessary in its analysis.

### III. <u>Quasi-Judicial Immunity</u>

#### A. Legal Standard

"Judicial immunity has been extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." *Calley v. Town of Cortlandt*, No. 19-CV-5453, 2019 WL 11880434, at *5 (S.D.N.Y. July 8, 2019) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), and citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal); *see also Pikulin v. Gonzales*, No. 07-CV-0412, 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of legal documents)). In other words, "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 485,(1991)). Courts have held that "[c]lerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are, thus, entitled to absolute immunity. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *see also Humphrey v. Court Clerk for the Second Circuit,* No. 08-CV-0363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (explaining that court

4

clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing *Rodriguez*, 116 F.3d at 67); *see also Argentieri v. Clerk of Ct. for Judge Kmiotek*, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006) ("Inasmuch as [the] plaintiff claims that [the] defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, [the] defendants were assisting judges in performing essential judicial functions. As a result, [the] plaintiff's claims are barred by absolute immunity.").

### B. Analysis

Plaintiff asserts claims against the defendants as follows:

(a) Michael Meyer in his capacity as "Deputy Chief Motion Attorney for the Supreme Court Appellate Division, Third Judicial Department;"

(b) Amy Conway in her capacity as "Chief Motion Attorney for the Supreme Court Appellate Division, Third Judicial Department;" and

(c) Erica Putnam Little in her capacity as "Managing Attorney at the Clerk's Office for the Supreme Court Appellate Division, Third Judicial Department."

(Compl., ¶¶ 47-49).

Attached to plaintiff's complaint are a myriad of exhibits, including emails between plaintiff, defendant Meyer, and defendant Conway regarding the filing fees for plaintiff's appeal and the motion fee for his Order To Show Cause. (Compl., Exhibits "E,", "F," "H," "I," "J," K," and "L"). Notably, there are no allegations in the complaint that defendant Erica Putnam Little violated plaintiff's constitutional rights. She is only

5

mentioned in the caption to this action and in paragraph "49" of the complaint which identifies her by job title.

Defendants' interactions with plaintiff were in furtherance of their respective job functions, all of which were closely associated with and essential to the judicial process. *See Calley* 2019 WL 11880434; *Cleavinger* 474 U.S. at 200; *Rodriguez*, 116 F.3d at 66. The court therefore recommends that plaintiff's complaint be dismissed with prejudice and without leave to amend, based on these defendants' immunity from the claims described by plaintiff.

## IV.   <u>Opportunity to Amend</u>

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). That is the precisely the situation here – the defects with plaintiff's complaint are substantive and there are not set facts that would subject defendants to liability.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED**, and it is

**RECOMMENDED,** that the District Court **DISMISS** the complaint (Dkt. No. 1) in its entirety **WITH PREJUDICE** without leave to amend, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[2]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  January 16, 2025

Mitchell J. Katz
U.S. Magistrate Judge

---

[2] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 8 of 33

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)

|

Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]     On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1** The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]   Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally*. On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerran, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

 **\*4**  The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at *2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 11 of 33

Houston v. Collerian, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

## B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerian, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 13 of 33

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

## C. First Amendment

### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

*7 It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 8:25-cv-00018-LEK-MJK   Document 6   Filed 01/16/25   Page 15 of 33

Houston v. Collerian, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]   The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

[10]   The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 8:25-cv-00018-LEK-MJK   Document 6   Filed 01/16/25   Page 16 of 33

Houston v. Collerian, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.'" *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 17 of 33
Houston v. Collerian, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury
"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS
Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion
**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

ORDERED that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

ORDERED that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]  If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

ORDERED that DOCCS is **DISMISSED** as a defendant herein; and it is further

ORDERED that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

ORDERED, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13** ORDERED, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

ORDERED, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

ORDERED, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

Case 8:25-cv-00018-LEK-MJK   Document 6   Filed 01/16/25   Page 19 of 33

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

2019 WL 11880434

2019 WL 11880434
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Wayne CALLEY; Jared Wayne Calley, Plaintiffs,

v.

TOWN OF CORTLANDT; Linda D. Puglisi, Town of
Cortlandt Supervisor; Town of Cortlandt Court Clerk
Audrey Stewart; Westchester County Police Department;
Westchester County Police Officer Coffee, Defendants.

19-CV-5453 (CM)
|
Signed 07/08/2019

**Attorneys and Law Firms**

Wayne Calley, Verplank, NY, Pro Se.

Jared Wayne Calley, Verplank, NY, Pro Se.

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

 **\*1** Plaintiffs, appearing *pro se*, bring this action alleging
that defendants violated their rights in connection with their
eviction from 17 Riverview Avenue in Verplank, New York.
By order dated June 14, 2019, the Court granted Plaintiffs'
requests to proceed without prepayment of fees, that is, *in
forma pauperis.*

STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or
portion thereof, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction.
*See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal
on any of these grounds, the Court is obliged to construe *pro
se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d
Cir. 2009), and interpret them to raise the "strongest [claims]
that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted) (emphasis in original).

BACKGROUND

Plaintiffs Wayne Calley and his adult son, Jared Calley, make
the following allegations. Beginning in May or June 2005,
they occupied 17 River View Avenue in Verplank, New York.
They obtained "squatter's rights" to the land through adverse
possession. On March 20, 2017, and April 20, 2017, they
submitted a petition regarding their adverse possession claim
to the Clerk of the Town of Cortlandt, who accepted and date-
stamped these documents. No proceedings were held based
on those petitions.

Town Supervisor Linda D. Puglisi and the Town of Cortlandt
committed fraud by "manufacturing falsified deeds of
ownership," using a tax identification number for neighboring
property owened by Viking Boat Yard. [1] The Town of
Cortlandt, acting "without notice or due process," obtained a
judgment against Wayne Calley for $2,844.60 for water bills
dating back to March 1, 2017.

[1]     It is unclear from Plaintiffs' allegations whether the
        alleged fraud took place in court proceedings or
        what representations were made.

On September 20, 2018, the Town of Cortlandt evicted
Plaintiffs. One or more defendants entered the premises while
Plaintiffs were absent and "remov[ed] property, removed
property fences, damage[ed] water pipes, ripp[ed] down
cable and phone lines." They also "used the Westchester
County Police to threaten and intimidate[e]" Plaintiffs. This
resulted in "loss of property rights, loss of property, property
damages, and displacement." The Town Court Clerk Audrey
Stewart "effectively denied [plaintiffs] meaningful access to
the court."

Plaintiffs allege that this has caused them extreme hardship,
and they seek damages. They name as Defendants in this
action the Town of Cortlandt, Town of Cortlandt Supervisor
Linda Puglisi, Town of Courtland Court Clerk Audrey
Stewart, and the Westchester County Police Department.
They also name Westchester County Police Officer Coffee as
a defendant in the caption of the complaint, but do not mention
him in the body of the complaint.

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

2019 WL 11880434

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 20 of 33

**\*2**  Plaintiff Wayne Calley had a prior action in this Court relating to the same trailer park in Verplank, New York. In 2016, Wayne Calley removed to this Court under 28 U.S.C. § 1141 an action that the Town of Cortlandt had filed against him in the Town of Cortland Justice Court in connection with his residence at Riverview Avenue in a trailer park in Verplank, New York. *New York. Town of Cortlandt v. Calley*, No. 16-CV-9675 (GBD) (S.D.N.Y. Dec. 15, 2016). [2] According to documents filed in that action, the trailer park owner, James Martin, deeded the property to the Town of Cortlandt, but this was to be effective ten years after his death. [3] Although the allegations are not entirely clear, Calley appeared to indicate in that action that he sublet the residence from someone else. He attached to his complaint in the 2016 action a January 31, 2014 letter notifying residents of the mobile home park that they could "remain in their mobile homes until July 2016," and urging them to begin planning for relocation. *Calley*, No. 16-CV-9675 (Compl. at 27). He further alleged that on November 15, 2016, he "was served a Notice to Quit." That action was remanded to state court.

[2]  It is unclear whether this action involved the same parcel because that action mentioned 19 Riverview Avenue, *Calley*, No. 16-CV-9675 (GBD) (S.D.N.Y.) (Notice of Removal at 26), and this suit refers to 17 Riverview Avenue (Compl. at 1).

[3]  Several other residents of the Verplank trailer park filed suits. *See, e.g., Riveredge Owners' Association et al. v. Town of Cortlandt, Inc.*, No. 16-CV-5665 (GBD)(JLC); *see also LaForgia et al. v. Vergano, P.E.*, No. 15-CV-08589 (KMK) ("Martin's property became encumbered to the Town of Cortland for property tax arrearages of roughly \$45,000. To discharge these tax arrearages, Martin deeded the property to the Town of Cortland but retained an interest in the property and noted in the deed that 'for ten (10) years after [Martin's] death the residents at Riveredge would be permitted to retain their rights of use and quiet enjoyment upon the property.' Martin ... passed away on July 3, 2006.").

## DISCUSSION

### A. Personal Involvement

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiffs name Westchester County Police Officer Coffee as a defendant in the caption of the complaint but fail to plead any facts in the body of the complaint about what Defendant Coffee allegedly did or failed to do that violated his rights. Plaintiffs thus fail to state a claim against Defendant Coffee.

Plaintiffs' allegations that the Town of Cortlandt "used the Westchester County Police to threaten and intimidate[e]" them during the "demolition" of their property, without more facts, also do not state a claim under § 1983 on which relief can be granted against Police Officer Coffee or the Town of Cortlandt. *See, e.g., Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, 'unaccompanied by any injury, no matter how inappropriate, unprofessional or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.").

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects unless it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Although it seems unlikely from the allegations of the complaint that Plaintiffs can state a claim against Defendant Coffee, because it is not clear that granting leave to amend would be futile, the Court grants Plaintiffs leave to amend his complaint to replead his claims against this defendant. If Plaintiffs file an amended complaint and name Police Officer Coffee as a defendant, they must include facts in the amended complaint about what he personally did or failed to do that violated their rights.

### B. Westchester County Police Department

**\*3**  Plaintiffs' claims against the Westchester County Police Department must be dismissed. Under New York law, municipal agencies or departments do not have the capacity to be sued. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

2019 WL 11880434

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 21 of 33

sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").

Moreover, Plaintiffs do not make out any claim against the County of Westchester. When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See* Connick v. Thompson, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011).

In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See* Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012); Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (internal citations omitted). Plaintiffs do not allege in their complaint that any custom, policy, or practice of the County of Westchester caused a violation of their rights.

If Plaintiffs choose to file an amended complaint and replead their claims against the County of Westchester, they must include facts showing how a custom, policy, or practice of the County of Westchester caused a violation of their rights.

## C. Procedural Due Process
"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest ... and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)). Where the government deprives a plaintiff of a protected interest pursuant to an established procedure,[4] due process generally requires some form of hearing before the government finally deprives the individual of the property interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

4    Conduct is undertaken in accordance with established state procedures when, for example, it is "pursuant to a statute, code, regulation, or custom" or is the result of a decision made by a high-ranking official with "final authority over significant matters," *see* Viteritti v. Inc. Vill. of Bayville, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (citing Chase Grp. Alliance LLC v. City of New York Dep't of Fin., 620 F.3d 146, 152 n.3 (2d Cir. 2010)).

By contrast, a government agent's random and unauthorized act does not violate due process if a meaningful post-deprivation remedy is available; when the government cannot predict precisely when the loss will occur, it would be impossible to provide a meaningful hearing *before* the deprivation. *See* Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 540-43 (1981), *overruled in part on other grounds by* Daniels v. Williams, 474 U.S. 327, 220-31 (1986); *see also* Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty.").

**\*4** Here, Plaintiffs allege that they submitted petitions to the Town Clerk in 2017, seeking to establish that they owned their residence in Verplank under adverse possession laws. Despite their submission of a petition, "no proceedings ever took place" (Compl. at 1), and they appear to assert a procedural due process claim on this basis. Plaintiffs do not indicate why they filed such a document with the clerk rather than filing an action in state court, and the Court is unaware of any state procedure that would allow them to establish their property rights by submitting a petition to the Town Clerk.

Plaintiffs had the option of bringing a quiet title action in state court to establish their alleged right to adverse possession.[5] In the alternative, if the Town of Cortlandt brought an action in state court to eject Plaintiffs from the premises, as it appears from the pleadings in *Town of Cortlandt v. Calley*, No. 16-CV-9675 (GBD) (S.D.N.Y.), that the Town of Cortlandt may have done, Plaintiffs could have raised their claim of adverse possession as a defense in the eviction or ejection proceedings.[6] Plaintiffs make no allegation that the procedures available to them under state law were inadequate. The fact that they submitted a petition to the "Clerk of the Town of Cortlandt," that failed to trigger any proceedings,

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 22 of 33

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

2019 WL 11880434

does not state a claim for a violation of their rights to procedural due process. Moreover, the failure to use available state procedures, such as a quiet title action, appears to preclude a claim for the denial of due process as to their real property rights. [7]

[5] Under New York law, to establish a claim of title to real property by adverse possession, a party must demonstrate, by clear and convincing evidence, that the possession was (1) hostile and under claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period of 10 years. *See Estate of Becker v. Murtagh*, 19 N.Y.3d 75, 81 (2012).

[6] If the state court has already adjudicated whether Plaintiffs had any possessory interest in the property, the Court cannot review that determination because federal district courts lack authority to review or overturn state court decisions.

[7] Even an initial review of the adverse possession claim suggests that under New York law, this claim cannot succeed. For example, N.Y. R.P.A.P.L. § 531 provides that "[w]here the relation of landlord and tenant has existed, the possession of the tenant is deemed the possession of the landlord until the expiration of ten years after the termination of the tenancy; or, where there has been no written lease, until the expiration of ten years after the last payment of rent." Therefore, if parties "occupied the premises as tenants without a written lease, [this] would raise a presumption of nonadversity for 10 years from the last payment of rent ..., and require that a minimum period of 20 years elapse from the last payment of rent for their occupancy to ripen into adverse possession. *Hogan v. Kelly*, 86 A.D.3d 590, 593 (App. Div. 2d Dep't 2011).

Plaintiffs do allege that Court Clerk Audrey Stewart has "effectively denied [plaintiffs] meaningful access to the court." (Compl. at 2.) Plaintiffs may be alleging that they were prevented in some way from vindicating their rights. Plaintiffs' allegations, however, do not include any facts about what occurred and therefore fail to state a claim on which relief can be granted for denial of the right to procedural due process. As set forth below, Plaintiffs likely cannot pursue a claim for damages against Stewart. But because Plaintiffs may be suggesting that they were prevented from vindicating their rights in connection with the destruction of their personal or real property, the Court grants Plaintiffs leave to replead their claims. If Plaintiffs file an amended complaint repleading their claims, they must include facts about what happened that rendered inadequate the remedies available to them under state law.

**D. Court Clerk Audrey Stewart**

**\*5** Judges are absolutely immune from suit for damages for acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity has been extended to court clerks and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal); *Pikulin v. Gonzales*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N. Y Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of legal documents).

While some courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are entitled to absolute immunity, *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010) *aff'd*, 434 F. App'x 32 (2d Cir. 2011), others have noted that "[t]he refusal of a clerk of a court to accept the papers of a litigant seeking to commence an action under a state statute may deprive that litigant of federal constitutional rights," *Humphrey v. Court Clerk for the Second Circuit*, No. 08-CV-0363 (DNH), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (relying on *LeGrand v. Evan*, 702 F.2d 415, 418 (2d Cir. 1983) (reversing decision dismissing as frivolous complaint that alleged that clerk of the New York Supreme Court, Kings County, refused to accept applications for a writ of *habeas corpus*, and noting that "many courts have accorded clerks

only a qualified 'good faith' immunity from liability arising from ministerial acts.")).

Here, Plaintiffs allege that court clerk Audrey Stewart has "effectively denied [plaintiffs'] meaningful access to the court." (Compl. at 2.) These allegations fail to state a claim on which relief can be granted because Plaintiffs do not plead any facts about what Defendant Stewart did or failed to do that violated their rights. Plaintiffs' claims against Audrey Stewart are therefore dismissed for failure to state a claim on which relief can be granted, without prejudice to repleading. 28 U.S.C. § 1915(e)(2)(B)(ii).

**E. Town Supervisor Linda Puglisi**
Plaintiffs allege that Town Supervisor Linda Puglisi engaged in "fraudulent concealment of public title information" and manufactured "falsified deeds of ownership." (Compl. at 2.) As with several of Plaintiffs' other claims, Plaintiffs have not alleged facts about what happened or what Defendant Puglisi allegedly did or failed to do. Plaintiffs state that the Town Supervisor used a tax identification number for a different property, but these allegations are insufficient to explain what occurred. It is unclear, for example, if they contend that misrepresentations were made in court proceedings or in some other context. Plaintiffs thus fail to state a claim on which relief can be granted against Town Supervisor Puglisi.

**LEAVE TO AMEND**

*6 Plaintiffs are granted leave to amend their complaint to detail their claims. First, Plaintiffs must name as the defendant(s) in the caption [8] and in the statement of claim those individuals who were allegedly involved in the deprivation of their federal rights. If Plaintiffs do not know the name of a defendant, they may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. [9] In the statement of claim, Plaintiffs must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiffs are also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiffs' amended complaint must:

    a) give the names and titles of all relevant persons;

    b) describe all relevant events, stating the facts that support Plaintiffs' case including what each defendant did or failed to do;

    c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

    d) give the location where each relevant event occurred;

    e) describe how each defendant's acts or omissions violated Plaintiffs' rights and describe the injuries Plaintiffs suffered; and

    f) state what relief Plaintiffs seek from the Court, such as money damages, injunctive relief, or declaratory relief.

[8]    The caption is located on the front page of the complaint. Each individual defendant must be named in the caption and also be discussed in Plaintiffs' statement of claim.

[9]    For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2010, at Sullivan Correctional Facility, during the 7-3 p.m. shift." The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiffs shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending their complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiffs seek to add a new claim or party after the statute of limitations period has expired, they must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

Essentially, the body of Plaintiffs' amended complaint must tell the Court: who violated their federally protected rights; what facts show that their federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiffs are entitled to relief. Because Plaintiffs' amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiffs wish to maintain must be included in the amended complaint.

**CONCLUSION**

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiffs, and note service on the docket. Plaintiffs are granted leave to file an amended complaint that complies with the standards set forth above. Plaintiffs must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-5453 (CM). No summons will issue at this time. If Plaintiffs fail to comply within the time allowed, and they cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*7** SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

-against-

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____
(include case number if one has been assigned)

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes   ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 2/30/17

**Calley v. Town of Cortlandt,** Not Reported in Fed. Supp. (2019)
Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 25 of 33

2019 WL 11880434

**I.  BASIS FOR JURISDICTION**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐  **Federal Question**

☐  **Diversity of Citizenship**

**A.  If you checked Federal Question**

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

**B.  If you checked Diversity of Citizenship**

1. **Citizenship of the parties**

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                    (Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

**II.  PARTIES**

**A.  Plaintiff Information**

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name | |
|---|---|---|---|

Street Address

| County, City | State | Zip Code |
|---|---|---|

| Telephone Number | Email Address (if available) |
|---|---|

Page 3

**B.  Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| First Name | Last Name |
|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name |
|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name |
|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Page 4

Defendant 4:

| First Name | Last Name |
|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

**III.  STATEMENT OF CLAIM**

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 26 of 33

**Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)**

2019 WL 11880434

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

Page 6

---

**V.  PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|
| First Name | Middle Initial | Last Name |
| Street Address | | |
| County, City | State | Zip Code |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**All Citations**

Not Reported in Fed. Supp., 2019 WL 11880434

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Courthouse News Service v. Forman,   N.D.Fla.,   May 4, 2022

2007 WL 1063353
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William PIKULIN & Savely Petreykov, Plaintiffs,
v.
Alberto GONZALES, Esq., Attorney General
of the United States of America; Lawrence M.
McKenna, Federal Judge of the United States
District Court, Southern District of New York; and
James Parkison, Clerk of the United States District
Court, Southern District of New York, Defendants.

No. 07-CV-0412 (CBA).
|
April 5, 2007.

**Attorneys and Law Firms**

William Pikulin, Brooklyn, NY, pro se.

Savely Petreykov, NY, pro se.

### AMENDED MEMORANDUM AND ORDER

AMON, United States District Judge.

**\*1**  Plaintiffs William Pikulin and Savely Petreykov brought this *pro se* action against a judge and the Clerk of the Court of the United States District Court for the Southern District of New York ("S.D.N.Y."). On February 23, 2007, this Court purported to grant the plaintiffs *in forma pauperis* application for the purpose of disposing of the action as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B). On March 9, 2007, plaintiffs filed a Motion for New Trial, in which they complain that they did not seek *in forma pauperis* status in this case, and, accordingly, the dismissal pursuant to § 1915, which governs *in forma pauperis* actions, was improper. Though plaintiffs had sought *in forma pauperis* status in the last case filed before this Court, docket number 06-CV-3959, they paid the filing fee in the instant case and did not seek *in forma pauperis* status. Accordingly, in the February 23, 2007 Order, the Court should have relied on its inherent power to

dismiss frivolous actions, rather than § 1915(e). Accordingly, the Court issues the below amended order dismissing the action as frivolous pursuant to its inherent power to dismiss frivolous cases. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000). In addition, plaintiffs claim that the Court be recused from the case for the above error is denied as without merit. Adverse decisions on cases are not a grounds for disqualification. 28 U.S.C. § 455; *Liteky v. United States,* 510 U.S. 540, 555 (1994).

### BACKGROUND

Plaintiffs believe they were harmed as a result of a series of events that began in 1988, when a construction company they owned, W .P. Contractors, Inc., entered into a contract with the City of New York. (Complaint ¶ 9.) Beginning in 1995, plaintiffs have made multiple attempts to litigate these issues in the courts of the Southern and Eastern Districts of New York. [1]  Apparently unhappy with the outcome of these initial cases, plaintiffs filed this suit and another recent suit, *Pikulin, et. al. v. The United States, et. al.,* 06 CV 3959(CBA), in this Court, alleging that the judges and other judicial officers in the previous cases obstructed the litigation in those cases. The Court dismissed the recent case against the E.D.N.Y. officials by Order dated December 15, 2006.

[1]   On February 17, 1995, plaintiffs filed suit in the S.D.N.Y. against the City University of New York. The S.D.N.Y. dismissed the amended complaint in 1996. *Pikulin, et al v. The City University,* 95 Civ. 01147(LMM), 1996 WL 744896 (S.D.N.Y., Dec. 13, 1996). On appeal, the United States Court of Appeals for the Second Circuit ("Second Circuit") affirmed in part, vacated in part, and remanded to the district court. *Pikulin v. City University of New York,* 176 F.3d 598, 79 Fair Empl. Prac. Cas. (BNA) 1534 (2d Cir.1999). On remand, the S.D.N.Y. granted defendant's motion to dismiss on statute of limitations grounds. *Pikulin,* 95 Civ. 01147 (LMM), 2001 WL 913943 (S.D.N.Y. August 14, 2001). Simultaneously, plaintiffs filed suit in the Eastern District of New York ("E.D.N.Y.") against International Fidelity Insurance Company, regarding the same alleged harm. *Petreykov, et. al. v. International Fidelity Insurance Co.,* No. 95 CV 1428(EHN). After their case was dismissed by this Court, *Petreykov, No. 95 CV*

Case 8:25-cv-00018-LEK-MJK    Document 6    Filed 01/16/25    Page 28 of 33
Pikulin v. Gonzales, Not Reported in F.Supp.2d (2007)

2007 WL 1063353

1428, 1999 WL 1186807 (E.D.N.Y. Oct. 12, 1999) (granting defendant's motion for summary judgment), Plaintiff's appeal to the Second Circuit was dismissed on May 9, 2000, *Petreykov, et al v. International, et al,* No. 99-9471 (2d Cir. May 3, 2000). Two other cases, *Petreykov, et al v. Vacco, et al,* 97 Civ. 07473(TPG), filed in the S.D.N.Y., and *Petreykov, et al v. Bush, et al,* 05 CV 05438(CBA), filed in the E.D.N.Y. and then withdrawn, appear to be unrelated to these cases.

The instant case names as defendants the Honorable Lawrence M. McKenna, the presiding judge in the original action in the S.D.N.Y.; the Clerk of Court for the S.D.N.Y., James Parkison (collectively, "the judicial defendants"); and Alberto Gonzales, the current Attorney General of the United States. Plaintiffs allege that the judicial defendants violated plaintiffs' civil rights by permitting the City of New York to file "illegal motions," altering docket entries, refusing to enforce an alleged default judgment against defendant, refusing to accept for filing copies of previously filed documents, removing from the docket an August 5, 1996 Order issued by Judge McKenna, and intentionally mailing documents to an incorrect address. (*Id.* ¶¶ 20-22, 29, 45, 56, 78). Plaintiffs further allege that Judge McKenna denied plaintiffs' motions and "unconstitutionally and unlawfully" refused to recuse himself. (*Id.* ¶¶ 31-34, 51.) Plaintiffs claim that these actions constitute violations of several sections of Title 28 of the United States Code regarding the judiciary and judicial procedure, and of plaintiffs' civil rights in violation of Sections 1981, 1983, and 1985(2) of Title 42 of the United States Code. (*Id.* ¶¶ 88-89.) Plaintiffs allege that the current United States Attorney General, defendant Alberto Gonzales, has deprived them of civil rights in violation of 42 U.S.C. §§ 1985(3) and 1986, and is "responsible for the crimes committed by [the judicial officials]." (*Id.*) Plaintiffs seek $500,000,000 in damages against the judicial defendants and $300,000,000 in damages against Defendant Gonzales. Plaintiffs further demand that this Court enforce an alleged "unopposed 'Willful Default Judgment # 95 civ 1147 SDNY' from May 15, 1995," plus interest, in an amount of $423,267,080 against the City of New York, who is not a party to this case.

### DISCUSSION

#### A. Standard of Review

**\*2** The Court has the inherent power to dismiss frivolous cases. *Fitzgerald,* 221 F.3d at 364. Because plaintiffs are *pro se,* their complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999).

#### B. Judicial Immunity

All of plaintiffs' claims against judicial officers acting in their judicial capacities must be dismissed, as judges are entitled to absolute immunity from suit. *See Mireles v. Waco,* 502 U.S. 9, 11 (1991). Absolute judicial immunity extends to court clerks who are performing tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997). Plaintiffs' allegations against the judicial defendants relate to judicial acts performed within their judicial capacities, including the Clerk's Office activities of filing and docketing legal documents and Judge McKenna's rulings on legal motions. These actions constitute an "integral part of the judicial process" and are therefore shielded from liability by absolute judicial immunity. "A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir.1999) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

In any event, all of plaintiffs' claims would be time-barred. The statute of limitations for civil rights actions arising in New York is three years. *Ish Yerushalayim v. United States,* 374 F.3d 89, 91 (2d Cir.2004) (per curiam).[2] The most recent allegation of wrongdoing occurred in 2001.

[2]    Plaintiffs ostensibly base their claims against the judicial defendants on Sections 1981, 1983, and 1985(2) of Title 42 of the United States Code. Section 1983 allows individuals to bring suit against *persons* who, under color of *state* law, have caused them to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S .C. § 1983. Actions bringing constitutional claims against *federal* agents may be brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), which permits recovery for some constitutional violations by federal agents,

even in the absence of a statute conferring such a right. *Carlson v. Green,* 446 U.S. 14, 18 (1980). The statute of limitations for *Bivens* claims, as for Sections 1981, 1983, and 1985, is borrowed from the state law statute of limitations for personal injury actions. *See Okure v. Owens,* 816 F.2d 45 (2d Cir.1987)(applying *Wilson v. Garcia,* 471 U.S. 261 (1985) and Section 214(5) of the New York Civil Practice Law and Rules to find a three-year statute of limitations for Section 1983 actions arising in New York State); *Chin v. Bowen,* 833 F.2d 21, 24-25 (2d Cir.1987) (extending the *Okure* reasoning and the three-year statute of limitations to *Bivens* actions); *King v. American Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002) (noting that the timeliness of a section 1981 claim in New York is governed by the state's three-year personal injury statute of limitations); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ("The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years.").

### C. Claims against the Attorney General

Plaintiffs argue that defendant Gonzales is liable, pursuant to 42 U.S.C. § 1985(3), for engaging in a conspiracy with the judicial officers, and that he is liable, under 42 U.S.C. § 1986, for failing to prevent the alleged conspiracy by the judicial defendants to violate plaintiffs' rights. Plaintiffs have failed to state a violation of either of these provisions.

To make out a violation of 42 U.S.C. § 1985(3), a plaintiff "must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 828-29 (1983). With respect to the second element, a plaintiff must show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)). Thus, in order to maintain a claim for conspiracy under Section 1985(3), plaintiffs must allege a deprivation of rights on account of their membership in a protected class. *See Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.1987); *Coakley v. Jaffe,* 49 F.Supp.2d 615, 626 (S.D.N.Y.1999). Plaintiffs have made no allegation that they

are members of a protected class or that the alleged misdeeds of the judicial defendants were the result of any class-based animus against them.

**\*3** In order to establish a violation of Section 1986, a plaintiff must first establish a violation of Section 1985 which the Section 1986 defendant neglected to prevent. *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir.1997) ("[A] § 1986 claim must be predicated upon a valid § 1985 claim."). *Buck v. Bd. of Elections,* 536 F.2d 522, 524 (2d Cir.1976) (Knowledge of the wrongs conspired to be done in violation of § 1985 "is a statutory prerequisite to suit under ... § 1986."). As plaintiffs have failed to state a valid Section 1985 claim, there is no basis for assertion of a claim under Section 1986.

In any case, these claims would be barred by the relevant statutes of limitations. Section 1985 actions are subject to a three-year statute of limitations. *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001). Causes of action arising pursuant to Section 1986 must be brought within one year of accrual. 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued").

### C. Reinstatement of Prior Claims Against the City of New York

Although plaintiffs do not name the City of New York as a defendant in this action, part of the relief they seek is the reinstatement of an alleged default judgment against the defendant in their 1995 S.D.N.Y. case, the City University of New York ("CUNY"). Plaintiffs attach a copy of a Memorandum and Order issued by Judge McKenna on July 24, 1995, in which the court noted that CUNY had failed to respond to the amended complaint by May 15, 1995 and that default was entered by the clerk of the court. (Complaint, Ex. 7, Mem. & Order in 95 Civ. 1147, dated July 24, 1995). Thereafter, plaintiffs had served CUNY with a proposed "Default Judgment" for $200,719,039.30. (*Id.*) In the July 24, 1995 Order, the court granted CUNY's motion to set aside the entry of default and permitted CUNY to file a late motion to dismiss. (*Id.*)

Even if plaintiffs had named the City of New York in this case, these claims would be precluded by the doctrines of collateral estoppel and res judicata. These doctrines "protect parties from having to relitigate identical claims or issues and ... promote judicial economy." *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724, 731 (2d Cir.1998). Collateral

estoppel "bars a party from raising a specific factual or legal issue in a second action when the party had a full and fair opportunity to litigate the issue in a prior proceeding." *Id.* Res judicata "bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated." *Id.* (quoting *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998)). Plaintiffs had a full and fair opportunity to litigate these issues against the City of New York in their previous case. Accordingly, collateral estoppel and res judicata operate to preclude plaintiffs from relitigating these claims.

### CONCLUSION

For the reasons set forth above, the complaint is dismissed pursuant to the Court's inherent power to dismiss frivolous cases. *Fitzgerald,* 221 F.3d at 364. The motion for the Court's recusal is also denied. Moreover, the Court observes that if plaintiffs wish to appeal an order entered by Judge McKenna, the proper means to do so is to appeal his decision to the Second Circuit. This Court has no authority to reverse a decision of another district court judge.

**\*4** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1063353

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1945308

KeyCite Yellow Flag - Negative Treatment
Distinguished by  McKnight v. Middleton,  E.D.N.Y.,  March 29, 2010

2008 WL 1945308
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John Jay HUMPHREY, Plaintiff,
v.
COURT CLERK FOR THE
SECOND CIRCUIT, Defendant.

No. 508-CV-0363 (DNH)(DEP).
|
May 1, 2008.

**Attorneys and Law Firms**

John Jay Humphrey, pro se.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

**\*1**  The Court has received plaintiff John Jay Humphrey's
*pro se* complaint pursuant to *Bivens v. Six Unknown Named
Agents of the Federal Bureau of Narcotics,* 403 U.S. 388
(1971), for review, together with an *in forma pauperis*
application.[1] Dkt. Nos. 1, 2. For the reasons stated below,
plaintiff's complaint is dismissed pursuant to 28 U.S.C. §
1915(e).

[1]   The Court notes that plaintiff has filed numerous
      actions in this District in addition to the present
      case. *See Humphrey v. Onondaga County Sheriff,*
      5:02-CV-1524 (NPM/DEP); *Humphrey v. State of
      New York,* 5:03-CV-1181 (HGM/GJD); *Humphrey
      v. U.S. Gov't,* 5:04-CV-145 (HJM/GJD); *Humphrey
      v. Carni,* 5:05-CV-0253 (FJS/GHL); *Humphrey v.
      WIXT News Channel 9,* 5:05-CV-0636 (FJS/DEP);
      *Humphrey v. Rescue Mission,* 5:05-CV-0795
      (NAM/GJD); *Humphrey v. Rescue Mission,* 5:05-
      CV-0986 (FJS/GJD); *Humphrey v. Onondaga
      County Dep't of Soc. Servs.,* 5:05-CV-987 (NAM/
      GJD); *Humphrey v. Styers,* 5:05-CV-1036 (FJS/
      GHL); *Humphrey v. Court Clerk, NDNY,* 5:05-

CV-1159 (NAM/GJD); *Humphrey v. Weichert,*
5:05-CV-1205 (NAM/GJD); *Humphrey v. Two
Unknown Fed. Employees,* 5:06-CV-0786 (NAM/
DEP); *Humphrey v. Onondaga County Sheriff's
Dep't,* 5:07-CV-0721 (DNH/GJD); *Humphrey v.
Onondaga County Sheriff's Dep't,* 5:07-CV-1102
(DNH/GJD).

**I. *Background***

In his *pro se* complaint, plaintiff claims that the Clerk of
the United States Court of Appeals for the Second Circuit
failed to inform him until "months later" that his appeal
was dismissed in three of his prior actions, *Humphrey v.
WIXT News Channel 9,* 5:05-CV-0636 (FJS/DEP), *Humphrey
v. Weichert,* 5:05-CV-1205 (NAM/GJD); *Humphrey v. Two
Unknown Fed. Employees,* 5:06-CV-0786 (NAM/DEP). Dkt.
No. 1 at ¶¶ 1, 4-7. According to plaintiff, the Clerk's failure
to communicate with him hindered his ability to petition
the United States Supreme Court for writs of *certiorari* in
these actions. *Id.* at ¶¶ 10, 13. Plaintiff further alleges that
the Clerk neglected to provide him with the status of his
appeal in the action titled *Humphrey v. Styers,* 5:05-CV-1036
(FJS/GHL). *Id.* at ¶¶ 3, 8. Plaintiff seeks monetary relief
in the amount of One Million Dollars. *Id.* at p. 4. For a more
complete statement of plaintiff's claims, reference is made to
the complaint.

**II. *Discussion***

Turning to plaintiff's *in forma pauperis* application, the Court
finds that he may properly commence this action *in forma
pauperis* because he sets forth sufficient economic need. Dkt.
No. 2.

Since the Court has found that plaintiff meets the financial
criteria for commencing this case *in forma pauperis,* the
Court must now consider the sufficiency of the allegations
set forth in the complaint in light of 28 U.S.C. § 1915(e).
Section 1915(e) directs that, when a plaintiff seeks to proceed
*in forma pauperis,* "(2) ... the court shall dismiss the case
at any time if the court determines that-... (B) the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." [2] 28
U.S.C. § 1915(e)(2)(B). Thus, the court has a responsibility
to determine that a complaint may be properly maintained in
this district before it may permit a plaintiff to proceed with
an action *in forma pauperis.* [3]  *See id.* Although courts have a
duty to show liberality towards *pro se* litigants, *Nance v. Kelly,*

912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility placed upon the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* notwithstanding the fact the plaintiff has paid the statutory filing fee); *Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994) (finding that a district court has the power to dismiss a case *sua sponte* for failure to state a claim).

2    In determining whether an action is frivolous, the Court must determine whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

3    Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327.

 *2    As noted, plaintiff seeks to assert claims against the defendant for the violation of his constitutional rights. *Bivens* actions, although not precisely parallel, are the federal analog to Section 1983 actions against state actors. *See Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir1987) (noting that there is a "general trend in the appellate courts" to incorporate Section 1983 law into *Bivens* cases) (citation and quotations omitted). [4]

4    Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).

Plaintiff maintains that the "Court Clerk" for the Second Circuit Court of Appeals improperly failed to communicate with him regarding the status of the appeals in four of his cases. A review of the appellate dockets in *Humphrey v. Weichert, Humphrey v. Two Unknown Federal Employees,*

and *Humphrey v. WIXT News Channel 9* reveals that plaintiff indeed was immediately notified of the mandates dismissing his appeals in those actions. [5] *See Humphrey v. Weichert,* Appellate Action No. 05-6846; *Humphrey v. Two Unknown Federal Employees,* Appellate Action No. 07-0631; *Humphrey v. WIXT News Channel 9,* Appellate Action No. 05-4122. Plaintiff's appeal in *Humphrey v. Styers* remains pending, and plaintiff is free to inquire regarding the status of his case at any time. *See Humphrey v. Styers,* Appellate Action No. 05-6695.

5    It bears mentioning that in *WIXT News Channel 9,* the docket reflects that the notice sent to plaintiff regarding the issuance of a mandate dismissing his appeal for failure to comply with the scheduling order in that action was returned as undeliverable. That fact, however, is not determinative of the validity of plaintiff's claim.

The Court also notes that plaintiff does not clearly allege wrongdoing on the part of the individual who serves as the Clerk of the Court for the Second Circuit, as opposed to one or more of the individuals employed in the Clerk's Office. As with claims asserted under Section 1983, a plaintiff seeking to recover money damages in a *Bivens* action must establish that the named defendant was personally involved in the misconduct complained of. [6] *See Elmaghraby v. Ashcroft,* No. 04 CV 01809, 2005 WL 2375202, at *11 (E.D.N.Y. Sept. 27, 2005), *reversed on other grounds, Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007); *Richardson v. Goord,* 347 F .3d 431, 435 (2d Cir.2003) (discussing supervisory liability in context of a section 1983 claim); *see also Wilson v. Layne,* 526 U.S. 603, 609 (1999) (explaining that the qualified immunity analysis under *Bivens* is identical to the analysis under section 1983). In this case, plaintiff has not set forth sufficient facts to establish that the Clerk of the Court was personally involved in the actions complained of. In light of plaintiff's *pro se* status, the Court has considered whether plaintiff's complaint states a claim upon which relief could be granted assuming, *arguendo,* that he has properly identified the defendant and concludes that it does not.

6    A supervisory official can, however, be personally involved in a constitutional violation in one of several ways: (1) the supervisor may have directly participated in the challenged conduct; (2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; (3) the supervisor may

have created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or (5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

Courts have extended judicial immunity to court clerks for the performance of tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997); *see also Kampfer v. Rodriguez,* No. 97-CV-739, 1998 WL 187364, at *2 (N.D.N.Y. Apr. 15, 1998) (Pooler, D .J.). Court clerks enjoy absolute immunity even for administrative functions if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court. *Rodriguez,* 116 F.3d at 67. A court clerk, however, may not be entitled to absolute immunity in all cases, such as where the clerk's refusal to accept the papers of a litigant seeking to commence an action under a state statute results in the deprivation of the litigant's constitutional rights. *LeGrand v. Evan,* 702 F.2d 415, 418 (2d Cir.1983). In this case, plaintiff's allegations arise out of and relate to actions taken by court personnel which were in accordance with the established practice of the Second Circuit, and pursuant to the direction of a judicial officer as articulated in the relevant appellate mandates; accordingly, these actions constitute an integral part of the judicial process and are shielded from liability by judicial immunity. In any event, although plaintiff contends that the Clerk's alleged failure to communicate with him deprived him of his right to seek writs of *certiorari,* the pertinent dockets indicate that

such notification did indeed occur. Accordingly, defendant Clerk of the Court for the United States Court of Appeals for the Second Circuit is hereby dismissed with prejudice. [7]

[7]     In addition, while not deciding this matter on this basis, the Court notes that it is not clear that venue is appropriate in this District. *See* 28 U.S.C. § 1391(b).

**III.** *Conclusion*

**\*3** Plaintiff's complaint, as drafted, is not sufficient to state a claim for the violation of plaintiff's constitutional rights by the named defendant. The named defendant is immune from damages on the claims asserted in this *Bivens* action and the complaint lacks an arguable basis in law or in fact. Accordingly, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e).

THEREFORE, it is hereby

ORDERED, that

1. This action is DISMISSED;

2. Plaintiff's *in forma pauperis* application is DENIED as moot; and

3. The Clerk of the Court is directed to serve a copy of this Order on plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1945308

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.